STATE OF MISSOURI, Respondent, v. JEFFRIES,
Appellant.

St. Louis Court of Appeals, January 30, 1906.

1. **WIFE ABANDONMENT:** Evidence. On the trial of a defendant charged with wife abandonment, an indictment charging the same defendant with seduction under section 1844, Revised Statutes 1899, and the order of the court dismissing the prosecution of that indictment were admissible in evidence for the purpose of showing the defendant did not marry the prosecuting witness in good faith, but to escape punishment under that section.

2. **PRACTICE:** Remarks of Counsel: Timely Exception. Objection to the remarks of counsel in arguing a case cannot be considered on appeal, where the bill of exceptions does not show the ruling of the trial court on such objections

3. ————: Motion for New Trial: Ruling of Trial Court on Affidavits. Where a defendant was convicted of wife abandonment, affidavits filed in support of his motion for new trial and counter-affidavits filed by the State were considered by the trial court in overruling the motion, and, as presented, the ruling does not show an abuse of discretion.

Appeal from Webster Circuit Court.—*Hon. Argus Cox,*
Judge.

AFFIRMED.

*Dickey & McDowell* for appellant.

*J. P. Smith* and *M. Selph* for respondent.

BLAND, P. J.—At the October term, 1901, of the Webster Circuit Court, the defendant was convicted on an information charging him with wife abandonment. The jury found him guilty but was unable to agree upon the punishment and the court assessed his punishment at a fine of one hundred dollars. A motion for new trial was filed and overruled. Defendant duly appealed from the judgment.

No abstract of the record, no statement of the errors complained of, nor brief has been filed by either party. The case is here on a full transcript, from which it appears that at the March term, 1901, of the circuit court of Webster county, the grand jury presented an indictment against the defendant, charging that on April 12, 1900, at the county of Webster, under a promise of marriage made to Sarelda Moore, he unlawfully and feloniously seduced the said Sarelda, an unmarried female under twenty-one years of age and of good repute. Pending this indictment, the defendant and the said Sarelda were married, on August 12, 1901. The fact of the marriage was made known to the judge of the court, who, at the September term, 1901, dismissed the prosecution for seduction for the reason the defendant had married the prosecuting witness. It appears that the defendant was under twenty-one years of age and that Sarelda had a child by him, born prior to the marriage. Defendant had no home of his own or the means of acquiring one or the means to procure the necessary furniture to go to housekeeping, so on the day of his marriage he took his wife to his brother-in-law's with whom he had raised a farm crop.

The evidence of the prosecuting witness is, in substance, that after defendant took her to his brother-in-law's he was absent most of the time, spending his time at his father's and in the city of Springfield, making promises, however, from time to time, that he would go to housekeeping, but made no preparation or effort to set up a home, and finally, about six weeks after the marriage, said to his wife. "I am free and my bondsmen are free and I am going to stay away from you. You can go to your father's. I may not be back for two months and don't know that I will ever come back. You can go to your father's and live there, I don't intend to live with you and am not going to live with you. I am out of law and intend to stay out."

Pending the indictment for the seduction, before

his marriage, defendant said to one of his friends, "They may make me marry the girl but they can't make me live with her."

The evidence on the part of the State tends to show that the prosecuting witness treated the defendant with kindness and affection and was anxious to live with him and have a home of her own; that they had no personal difficulties or quarrels and the abandonment was wholly without cause; that neither before or after the separation did the defendant contribute one farthing to the support of his wife and never recalled or modified his order to her to go to her father's and live.

There is much countervailing evidence but what we have recited as having been adduced by the State, we think is sufficient to warrant the verdict of guilty; and the judgment should not be reversed unless prejudicial error; intervened at the trial. The defendant saved an exception to the introduction of the indictment for the seduction as evidence and the order of the court dismissing the prosecution of that indictment, for the reason the fact of the marriage was made known to the court. An indictment is not evidence of guilt and not of itself evidence of any fact, other than the one that it was presented by the grand jury. The statute creating the offense of seduction under promise of marriage (sec. 1844, R. S. 1899) provides: "If before judgment upon indictment, the defendant marry the woman seduced, it shall be a bar to any further prosecution of the offense," etc., and the cause shall be dismissed at the defendant's cost. This provision of the statute opens a way whereby a man indicted for seducing a woman under promise of marriage, may, if he be so base, escape punishment for his crime by going through the form and ceremony of marriage with her while he has in his mind and heart a fixed purpose not to become her husband in fact, but to throw off his marital obligations at the first favorable opportunity and abandon her and the fruit of his crime to shift for themselves as best they can. The evidence

for the State tends to show that defendant married the woman, whom he was indicted for seducing, for the sole purpose of escaping trial and apprehended conviction for the seduction, and at the first opportune moment sent her and his child back to her father's, telling her that he did not intend to live with her. It seems to us that the history of the marriage and the circumstances under which it was consummated were relevant to the issue as to whether or not the defendant abandoned his wife. They certainly shed light upon his conduct subsequent to the marriage and served to interpret his meaning when he told the prosecutrix to return to her father's house, that the did not intend to live with her. We think, therefore, under the peculiar state of facts shown in the case, the indictment for seduction and the order of the court dismissing the case were admissible for the purpose of showing that the defendant did not marry the prosecuting witness in good faith, but to escape apprehended punishment and with the intention of abandoning her.

The bill of exceptions shows that the prosecuting attorney, in his closing argument to the jury, over the objections of the defendant, stated that the defendant had been convicted and shown to be guilty of seducing the prosecuting witness prior to the institution of the prosecution for abandonment and had pleaded with her for mercy and marriage to save him from the penitentiary and that the defendant had married the prosecuting witness solely for the purpose of escaping the penitentiary on the charge of seduction. The bill of exceptions does not show what ruling, if any, was made on this objection. For aught that appears in the record, the court may have rebuked the prosecuting attorney or have taken some other action withdrawing the objectionable remarks from the jury. In the absence of any showing that the court made a ruling on the objection, adverse to the defendant, it is not before us for review.

Affidavits were filed in support of the motion for

new trial, directed to the misconduct of the officer in charge of the jury and for the purpose of impeaching the evidence of the prosecuting witness. Counter-affidavits were filed by the State. These affidavits raised issues of fact for solution by the trial court. It is by no means made clear by any of the affidavits that the officer was guilty of misconduct. The affidavits and counter-affidavits concerning the evidence of the prosecuting witness show that the defendant yet has her under his influence, that she is greatly attached to him and anxious that he should resume and continue his marital relations with her; and that under a promise to live with her — which promise he did not intend to keep — he induced her to write a letter impeaching some of her evidence. When confronted with this letter she, in an affidavit, disclosed the scheme the defendant had concocted to escape punishment for the abandonment, and reassured the truthfulness of her evidence. We do not think the learned trial judge was in error or was guilty of an abuse of his discretion in overruling the motion for new trial on the evidence as presented by the affidavits.

No reversible error appearing in the record, the judgment is affirmed. All concur.